IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) CIVIL ACTION NUMBER: |
| | ) |
| CVB INDUSTRIAL CONTRACTING, INC. and SELECTIVE WAY INSURANCE COMPANY | )<br>)<br>) |
| Defendants. | )<br>) |

## COMPLAINT

Plaintiff Travelers Property Casualty Company of America files this Complaint against Defendants CVB Industrial Contracting Inc. and Selective Way Insurance Company and states the following:

## PARTIES

1. Plaintiff Travelers Property Casualty Company of America ("Travelers") is incorporated in the state of Connecticut with its principal place of business in Hartford, Connecticut.

2. Defendant CVB Industrial Contracting, Inc. ("CVB") is incorporated in the state of Georgia with its principal place of business in Washington County, Georgia.

3. Defendant Selective Way Insurance Company ("Selective") is incorporated in the state of New Jersey with its principal place of business in New Jersey.

## JURISDICTION AND VENUE

4. Travelers invokes this Court's jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. Section 1332.

5. As set forth above, the parties are diverse. In addition, the amount in controversy meets the jurisdictional requirements of this Court because the damages Travelers seeks exceed $75,000.

6. Venue is proper in this Court pursuant to 28 U.S.C. Section 1391(a). The incidents which are the basis of the claims in this complaint occurred in Washington County, Georgia.

## FACTUAL ALLEGATIONS

**A.   Underlying facts and underlying litigation.**

7. Thiele Kaolin Company ("Thiele") is a kaolin processor located in Sandersonville, Georgia.

8. Thiele uses railcars to transport its product to and from its premises.

9. CVB is an employee leasing company also located in Sandersonsville, Georgia.

10. Travis A. Barnes was an employee of CVB.

11. Thiele contracted with CVB to provide workers to clean its railcars after they were returned to Thiele's facility.

12. Mr. Barnes was one of those workers CVB provided to Thiele to clean out the railcars.

13. On July 15, 2015, Mr. Barnes, while an employee of CVB, entered a railcar on the Thiele facility though a hatch in the top of the railcar in order to clear out residual kaolin.

14. When Mr. Barnes entered the railcar, it was an oxygen-deficient environment and Mr. Barnes experienced environmental suffocation, resulting in his death.

15. Mr. Barnes's estate filed a lawsuit against Thiele and others, seeking compensatory and punitive damages as a result of Mr. Barnes' death ("the underlying litigation").

16. Travelers issued a commercial general liability policy and umbrella liability policy to Thiele for the policy period January 1, 2015 to January 1, 2016.

17. Travelers provided a defense to Thiele for the claims in the underlying litigation.

18. The underlying lawsuit ultimately settled, and Travelers paid funds to settle the claims against Thiele.

**B.   Contractual Agreements between Thiele and CVB.**

19. Pursuant to a January 1, 2015 Purchase Order between CVB and Thiele (the "2015 Purchase Order"), CVB supplied its employees to perform certain work for Thiele, and Thiele paid CVB for those services. [A copy of the 2015 Purchase Order is attached hereto as Exhibit A].

20. Mr. Barnes, as an employee of CVB, was working at the Thiele facility pursuant to the 2015 Purchase Order.

21. The 2015 Purchase Order includes the following Paragraph 8, entitled Warranties, which required CVB's employees to comply with all of Thiele's rules regarding conduct (including those regarding health, safety, and welfare) while on Thiele's premises:

> 8.   Warranties. A. Seller expressly warrants that: (i) title to all goods and materials sold hereunder or services performed hereunder will pass to Buyer upon delivery free and clear of all liens, claims, security interests or other encumbrances; (ii) no portion of any goods or materials sold hereunder or any services performed hereunder will have been acquired by Seller subject to an agreement or right under which any interest therein or any encumbrance thereon will survive delivery of the goods, materials and/or services to Buyer; and (iii) in conducting any activity on any premises of Buyer, all personnel of Seller (including without limitation those of Seller's suppliers and other subcontractors) will comply with all of Boyer's rules applicable to conduct at those premises (including but not limited to those applicable to health, safety and welfare).

[Exhibit A at ¶ 8].

22. The 2015 Purchase Order also includes Paragraph 12, entitled Independent Contractor, which provided that all personnel of CVB, which included Mr. Barnes, would be under the exclusive control of CVB:

> 12. Independent Contractor. Seller agrees that in the performance of this Purchase Order Seller is and shall be an independent contractor and that all personnel of Seller (and its suppliers and other subcontractors) shall be subject to the exclusive control, supervision and authority of Seller (even when conducting activity on Seller's premises). Further, Seller, as an independent contractor, will pay and be solely responsible for any and all sales and/or use taxes on all supplies used in producing or furnishing goods, materials and/or services hereunder and otherwise in the performance of Seller's obligations hereunder, all in accordance with applicable Federal, state and local laws, regulations or orders.

[Exhibit A at ¶ 12].

23. The 2015 Purchase Order also includes Paragraph 9, entitled Indemnity, through which CVB agreed to defend and indemnify Thiele for any claims or damages arising out of or related to a breach of the above warranties or any act or omission of CVB:

> 9. Indemnity. A. Seller hereby indemnifies and agrees to defend, protect and hold harmless Buyer, its officers, directors, employees, agents, servants, successors and assigns from and against any and all losses, damages, injuries (including death), claims, demands, expenses and legal fees, of whatever nature, arising out of or related to: (i) breach of any of Seller's warranties; (ii) the condition (including, but not limited to, latent and other defects and whether or not discernible or discoverable) of any goods or materials sold hereunder; (iii) any act or omission of Seller (including without limitation negligence), whether or not in the performance of services hereunder; (iv) any act or omission of any supplier or other subcontractor of Seller, except only when due to the sole negligence of Buyer; (v) the goods and/or materials sold hereunder prior to transfer of title to Buyer; (vi) any dispute between Seller and any supplier, subcontractor or other third party (regarding for example but not limited to Seller's failure to pay any of them, or any lien, claim, security interest or other encumbrance asserted by any of them against Buyer or any Buyer property); and/or (vii) any actual or alleged failure of Seller or any of its suppliers or other subcontractors to comply with any applicable Federal, state or local law, regulation or order.

[Exhibit A at ¶ 9].

24.     In addition to the above, Thiele and CVB were parties to an Indemnity Agreement that they executed on January 31, 2008 (the "2008 Indemnity Agreement"). [A copy of the 2008 Indemnity Agreement is attached as Exhibit B].

25.     The 2008 Indemnity Agreement was in force at the time of Mr. Barnes' death.

26.     The 2008 Indemnity Agreement includes the following language:

> In consideration for the Company's retaining the services of the Agency, Agency hereby agrees to indemnify, defend and hold the Company harmless from and against any and all state or federal claims, causes of action, liabilities, fines, judgments, and expenses (including cost of investigation, court costs and attorneys' fees) of any mature whatsoever, whether known or unknown and whether direct or indirect, as though expressly set forth and described herein which the Company may incur, suffer, become liable for or which may be asserted or claimed against the Company as a result of or in connection with leased employee services, including but not limited to any claims for compensatory or punitive damages arising under the Civil Rights Act of 1964, as amended; 42 U.S.C. § 1981, as amended; the Employee Retirement Income Security Act of 1974, as amended; the Fair Labor Standards Act of 1938, as amended; the Americans With Disabilities Act; the Age Discrimination in Employment Act; the Family and Medical Leave Act, as amended; the National Labor Relations Act; and any applicable state fair employment, unemployment, or workers' compensation statutes or common law.

[Exhibit B].

27.     Under the provisions of the 2015 Purchase Order and the 2008 Indemnity Agreement between Thiele and CVB, CVB had an obligation to provide defense and indemnity to Thiele for the claims asserted in the underlying litigation.

28.     Thiele made demands on CVB to provide defense and indemnity for the claims asserted in the underlying litigation.

29.      CVB refused to defend or indemnify Thiele.

30.     As a result of CVB's failure to defend Thiele, Travelers had to provide a defense to Thiele, incurring costs in providing that defense.

31.     As a result of CVB's failure to indemnify Thiele, Travelers had to pay funds to resolve the claims against Thiele in the underlying litigation.

32.     Travelers has a right to recover, including a right of subrogation, amounts that it paid on behalf of Thiele in defense and settlement of the claims in the underlying litigation.

33.     In refusing to provide defense and indemnity, CVB has acted in bad faith, has been stubbornly litigious, and/or has caused Travelers unnecessary trouble and expense.

**C.    CVB's and Selective's insurance obligations.**

34.     The January 1, 2015 Purchase Order between CVB and Thiele also included the following insurance provisions:

> 10.     Insurance. If Seller performs any services or other work on Buyer's premises, then Seller will at all times during performance of this Purchase Order, keep in force (i) comprehensive general liability insurance, covering bodily injury and property damage, with limits of no less than $1 million per incident and $2 million in the aggregate, (ii) automobile liability insurance with combined single limits of $1 million, (iii) excess/umbrella liability insurance with limits of $2 million per occurrence, and (iv) workers' compensation and employer liability insurance as required by law but in no event with limits less than $100,000 per accident. Seller shall also maintain any greater or other insurance required by Buyer to address particular risks associated with performance of this particular Purchase Order, even if Seller does not need to come onto Buyer's premises. All of such policies shall name Buyer as an additional insured, provide that any change or termination of coverage will not be made without thirty (30) days' prior notice to Buyer, and include a waiver of all subrogation rights against Buyer. If requested by Buyer, Seller shall promptly deliver to Buyer certificates of insurance evidencing such coverage.

[Exhibit A at ¶ 10].

35.     Because CVB (Seller) was performing work on Thiele's (Buyer's) premises, CVB was required by the 2015 Purchase Order to name Thiele on the identified insurance policies, including a general liability policy and an excess/umbrella policy.

36.     At the time of Mr. Barnes' death, Selective had in place a general liability insurance policy and an umbrella liability insurance policy for its named insured, CVB. [*See* Exhibit C, May

6

8, 2015 Certificate of Insurance]. The limits for the general liability policy were $1,000,000 per occurrence and the limits for the umbrella liability policy were $4,000,000 per occurrence.

37. Thiele tendered the defense and indemnity of Thiele to Selective, but Selective declined coverage.

38. According to Selective, the Selective policy contains the following endorsement:

1. BLANKET ADDITIONAL INSUREDS

   A. Ongoing operations

   Section II – WHO IS AN INSURED is amended to include as an additional insured any person or organization you have agreed in a written contract, written agreement or written permit to add as an additional insured on your policy, but only with respect to liability arising out of your ongoing operations performed under that contract, agreement or permit that requires that the additional insured be added with respect to liability arising out of your ongoing operations. If the written contract or agreement, or written permit does not require that the additional insured be added with respect to liability arising out of your ongoing operations, the SECTION II – WHO IS AN INSURED is amended to include as an additional insured any person or organization you have agreed in a written contract, written agreement or written permit to add as an addition insured on your policy, but only with respect to "bodily injury," "property damage" or "personal injury and advertising injury" caused in whole or in part by your ongoing operations performed under that contract, agreement, or permit.

39. Thiele qualifies as an additional insured under the Selective policy.

40. Selective failed to provide defense and indemnity to Thiele as required under the Selective policy.

41. As a result of Selective's failure to provide a defense to Thiele, Travelers had to provide a defense to Thiele, incurring costs in providing that defense in the underlying litigation.

42. As a result of Selective's failure to provide indemnity to Thiele, Travelers had to pay funds to resolve the claims against Thiele in the underlying litigation.

43. Travelers has a right to recover, including a right of subrogation, for amounts it paid on behalf of Thiele in defense and settlement of the claims in the underlying litigation.

44. In refusing to provide defense and indemnity, Selective has been stubbornly litigious and/or has caused Travelers unnecessary trouble and expense.

### COUNT I -- CONTRACTUAL INDEMNITY AGAINST CVB

45. Travelers realleges all allegations set forth in the preceding paragraphs as if set forth fully herein.

46. The contract language set forth in the agreements between Thiele and CVB required CVB to defend, indemnify, and hold Thiele harmless from the claims asserted in the underlying litigation.

47. CVB breached its contractual duty under the agreements to defend, indemnify, and hold Thiele harmless from the claims asserted in the underlying litigation.

48. Because Selective failed to defend and indemnify Thiele, Travelers incurred defense costs in providing a defense to Thiele and paid funds in settlement of the underlying litigation to protect Thiele.

WHEREFORE, PREMISES CONSIDERED, Travelers demands judgment against CVB for compensatory damages, plus interest, costs, and attorney's fees, including litigation expenses pursuant to Georgia Code Section 13–6–11.

### COUNT II -- COMMON LAW INDEMNITY AGAINST CVB

49. Travelers realleges all allegations set forth in the preceding paragraphs as if set forth fully herein.

50. CVB is liable to Thiele for all claims asserted in the underlying litigation.

51. Because CVB is liable to Thiele for all the claims asserted in the underlying litigation, CVB owes a duty to indemnify Thiele for those claims asserted.

52. Travelers was required to pay funds on behalf of Thiele in defense and settlement of the claims against Thiele in the underlying litigation.

53. CVB is liable for those funds paid on behalf of Thiele in defense and settlement of the claims in the underlying litigation.

WHEREFORE, PREMISES CONSIDERED, Travelers demands judgment against CVB for compensatory damages, plus interest, costs, and attorney's fees, including litigation expenses pursuant to Georgia Code Section 13–6–11.

## COUNT III -- BREACH OF CONTRACT AGAINST SELECTIVE

54. Travelers realleges all allegations set forth in the preceding paragraphs as if set forth fully herein.

55. CVB was required to name Thiele as an additional insured under its policies.

56. At the time of Mr. Monroe's death, CVB was insured under policies issued by Selective, including a general liability policy and an umbrella policy. The limits for the general liability policy were $1,000,000 per occurrence and the limits for the umbrella liability policy were $4,000,000 per occurrence.

57. Thiele qualifies an additional insured under the Selective policies for the claims asserted in the underlying litigation.

58. By refusing to provide a defense or indemnity, Selective breached its obligations under the policies owed to Thiele.

59. Because Selective failed to defend and indemnify Thiele, Travelers incurred defense costs in providing a defense to Thiele and paid funds in settlement of the underlying litigation to protect Thiele.

60. Travelers has a right of subrogation, through Thiele, for the amounts that Travelers paid in defense and settlement of the claims in the underlying litigation.

WHEREFORE, PREMISES CONSIDERED, Travelers demands judgment against Selective for compensatory damages, plus interest, costs, and attorney's fees, including litigation expenses pursuant to Georgia Code Section 13–6–11.

## COUNT IV -- EQUITABLE SUBROGATION AGAINST CVB AND SELECTIVE

61. Travelers realleges all allegations set forth in the preceding paragraphs as if set forth fully herein.

62. CVB and Selective owed duties to defend and indemnify Thiele for the claims asserted in the underlying litigation.

63. Because CVB and Selective failed to defend and indemnify Thiele, Travelers incurred defense costs in providing a defense to Thiele and paid funds in settlement of the underlying litigation to protect Thiele.

64. Travelers is equitably subrogated to Thiele's rights against CVB and Selective, including the right to recover all amounts paid in defense and settlement of the claims in the underlying litigation.

WHEREFORE, PREMISES CONSIDERED, Travelers demands judgment against CVB and Selective for compensatory damages, plus interest, costs, and attorney's fees, including litigation expenses pursuant to Georgia Code Section 13–6–11.

## COUNT V – CONTRIBUTION AGAINST SELECTIVE

65. Travelers and Thiele reallege all allegations set forth in the preceding paragraphs as if set forth fully herein.

66. Thiele is an additional insured under Selective's policies issued to CVB.

67. Selective owed a duty to defend and indemnify Thiele for the claims asserted in the underlying litigation.

68. Travelers incurred costs in defending Thiele and paid funds in settlement of the claims against Thiele in the underlying litigation.

69. Travelers has a right of contribution against Selective for the amounts that it paid in defense and settlement of the claims asserted against Thiele in the underlying litigation.

WHEREFORE, PREMISES CONSIDERED, Travelers demands judgment against Selective for compensatory damages, plus interest, costs, and attorney's fees, including litigation expenses pursuant to Georgia Code Section 13–6–11.

## PRAYER FOR RELIEF

WHEREFORE, Travelers prays for a finding and award of the following:

a. That Travelers is entitled to reimbursement by CVB for the amounts that it paid in defense and settlement of the claims against Thiele the underlying litigation;

b. That Travelers is entitled to reimbursement by Selective for the amounts that it paid in defense and settlement of the claims against Thiele in the underlying litigation;

c. That Travelers has a right of subrogation through Thiele for the amounts that it paid in defense and in settlement of the underlying litigation;

d. That Travelers has a right of contribution against Selective for the amounts that it paid in defense and settlement of the underlying litigation;

  e. That Travelers is entitled to damages, including but not limited to, all costs of defense of the underlying litigation and the amounts paid in settlement, plus interest and all of Travelers' other compensatory damages;

  f. That an award of litigation expenses, including attorney's fees, is supported under the facts of this case and Georgia Code Section 13–6–11;

  g. That Travelers be awarded all of its litigation expenses, including attorney's fees, in this action; and

  h. That Travelers be awarded such other and further relief as deemed appropriate and just under these circumstances.

                Respectfully Submitted,

                s/Joel S. Isenberg
                Joel S. Isenberg (GA Bar No.: 108253)
                Susan H. McCurry (GA Bar No.: 340555)
                Attorneys for the Plaintiff

**OF COUNSEL:**
ELY & ISENBERG, LLC
2100-B SouthBridge Parkway
Suite 380
Birmingham, Alabama 35209
Phone: (205) 313-1200
Fax: (205) 313-1201
jisenberg@elylawllc.com
smccurry@elylawllc.com